PEOPLE'S R. CO. OF SYRACUSE *v.* SYRACUSE, B. & N. Y. R. CO.

*(Supreme Court, General Term, Fourth Department.* February 23, 1889.)

1. RAILROAD COMPANIES—CROSSINGS—STREET RAILROADS.
    The general railroad act (Laws N. Y. 1850, c. 140, § 28, subd. 6) provides that if two railroad companies, one of which is intended to cross the other, cannot agree in the matter, it shall be ascertained by commissioners. Laws 1880, c. 583, amending the above, provides that nothing contained in this act shall apply to any street rail-

road in New York city.  *Held* that, except in New York city, a street-railroad cannot cross the track of a steam-railroad company without its consent, unless the compensation, etc., shall have been previously determined.

2. INJUNCTION—VACATION—CONFLICT.

A counter-injunction obtained in a cross-action from a judge other than the one who granted the first injunction, and which can be enforced only by a violation of the first, should be vacated, without regard to the merits.

Appeal from special term, Onondaga county.

Action by the People's Railroad Company of Syracuse against the Syracuse, Binghamton & New York Railroad Company, to enjoin defendant from interfering with plaintiff in laying its track across defendant's road, and running its cars thereon.  On December 27, 1888, upon an *ex parte* application to Hon. A. J. NORTHRUP, county judge of Onondaga county, a preliminary injunction, in accordance with the prayer in its complaint, was granted to the plaintiff.  On the same day, but after the plaintiff's injunction was served on defendant, defendant commenced an action against plaintiff, and upon an *ex parte* application to Hon. IRVING G. VANN, justice of the supreme court, a preliminary injunction was granted commanding the People's Railroad Company, its agents, etc., to refrain and desist from in any manner constructing, maintaining, or operating its railroad over or upon the tracks or road-bed of the Syracuse, Binghamton, etc., Railroad Company.  The following is the opinion of KENNEDY, J., at special term, on a motion by plaintiff to vacate the restraining order granted by Justice VANN, and by defendant to vacate the order of Judge NORTHRUP:

"The order granted by Justice VANN is clearly in conflict with the provisions in that granted by Judge NORTHRUP, and its execution could only be enforced by a direct violation of the requirements of the latter.  Had the acts been committed by defendant, the Syracuse, Binghamton & New York Railroad Company, to prevent the plaintiff from doing what by it they are sought to be restrained from doing, without the order granted by Justice VANN, the guilty parties would have committed a contempt, and have been subject to the penalties which the law in such cases imposes.  That this illegal purpose was attempted to be accomplished, under the cloak of an order improperly applied for and inadvertently granted, *does not change the status* of the erring parties.  The simple fact of a party, who has been enjoined by an order properly made and served, and then in force, applying to another judge, having concurrent jurisdiction, for one to enable him to evade or avoid the effect of the first mandate, or to do what by it he is restrained from doing, is in itself a contempt.  Without, therefore, entering upon an examination of the merits involved in the application for the second injunction, a proper respect for the dignity of the officer granting the first, a due regard for the power confided to and to be exercised by the judiciary in the protection of the person and of property, coupled with the danger to each, if judicial mandates of this character may be disobeyed, although the same shall be under a guise of an equally to be respected command, compels me to the conclusion that the injunction order granted by Mr. Justice VANN should be vacated and set aside.

"The People's Railway Company of Syracuse is a corporation organized under the laws of the state for the purpose of constructing a horse railroad over the surface of certain streets and avenues in the city of Syracuse, one of these being on Onondaga street.   The defendant, the Syracuse, Binghamton & New York Railroad Company, which is also a domestic corporation, many years ago constructed a steam railroad, leading from the said city to the city of Binghamton, the track of which crossed Onondaga street upon the surface and on the street grade.  It was so laid more than thirty years ago by permission of the common council in said city; during all of which time it has used the same and has propelled its cars by steam-power over it.  The People's Company laid its rails in Onondaga street, upon both sides of the defend-

ant's tracks. Although negotiations were had between the respective roads, looking to the acquiring of permission by the latter road for the rails of the former to cross its tracks, which continued for several months, no agreement was reached. Having laid its rails up to those of the defendant, the plaintiff, without its consent and against its protest, appeared upon the ground with a number of men on December 27, 1888, and laid rails for its roads between those of the defendant, without in any manner interfering with them, and immediately procured the injunction in question, restraining said defendants from removing said rails, or from interfering with the plaintiff in the running of its cars over the crossing thus made. A statement of these facts tends to show that it was the intent and purpose of the plaintiff to force its tracks across that of the defendant, irrespective of any right it had or may have acquired in that part of said street over which its rails were laid, looking for future judicial action to protect it. The question involved, then, is, had the defendant acquired such exclusive rights in that part of Onondaga street occupied by it as to render the plaintiff a wrong-doer by entering thereon and laying its rails across its tracks on said street? If the plaintiff had no right, without the consent of the defendant,—and it had acquired none by proper legal proceedings to secure that end,—the fact that it only laid its rails between those of the defendant, even though they were not interfered with, (the only practical end to be attained being to secure right of way for its cars,) will not shield it from the illegality of its acts, or secure to it any rights by reason of them. The defendant acquired its charter rights, and was organized under and in pursuance of the general railroad act, (chapter 140 of the Laws of 1850,) and the several acts amendatory thereof, and all the rights and privileges conferred thereby became vested in it. One of these is the right to acquire land necessary for its use, by grant or the exercise of eminent domain, and upon payment of compensation. By subdivision 5 of section 28 it is provided that nothing in the act contained· shall be construed to authorize any such company to construct a railroad across any street, in any city, without the consent of the corporation of said city. When this consent is given, and a railroad track is laid across a street, the corporation laying the same acquires the right to use that portion of the street so occupied by it for its corporate uses. But the rights of the public are preserved, and its use by them is in no manner affected, except so far as the necessary inconvenience resulting from the use of said railroad track may interfere therewith, and this use cannot unreasonably abridge this public right. In 1854 the city of Syracuse granted to the Syracuse & Binghamton Railroad Company, the defendant's predecessor, the right to lay its track across Onondaga street for the purpose of using the same to operate a steam railroad upon; and it was in pursuance of this consent that the same was laid as at present located, and has since that time been used. The acceptance of this grant or permission, and the laying of the track by the defendant, vested in it an absolute right to use and occupy so much of said street as was necessarily occupied by it for the use and operation of its railroad, reserving the right of the public therein, as before stated. It has been held that the engines and cars of a steam-railway corporation have the exclusive right of this track as a whole, and the first right to use it at the place of intersection; and the general public traveling over said street, in the usual and ordinary manner, drawing near to such crossing, must yield priority of passage to such engines and cars. *Adolph* v. *Central Park, etc., Co.*, 76 N. Y. 530. The railroad being the owner of the rails laid, and having a right to use the ground between them for the passage of its cars, holds the same free from the wrongful encroachment thereon by any other incorporated railroad company, unless, as claimed by the plaintiff, the use of a street by a horse railroad is an appropriation of it to a public use as a highway. No right is vested in any railroad corporation, whether propelled by steam or horse power, to lay its tracks over the streets of a city

without the consent of the proper officers of the municipality, and when laid they are for the especial use of the corporation. It acquires and holds a superior right to the public to use them. This permission, then, is a franchise vested in the donee, and when availed of becomes a property as secure from all improper invasion as property of any other character, or acquired in any other manner. By the sixth subdivision of section 28 of the general railroad act, it is provided that every corporation formed under the act shall have power, when its railroad is intersected by any new railroad, to unite with the owners of such new railroad in forming such intersection or connection, and to grant the facilities asked for. If the two companies cannot agree upon such intersection or connection, and the grade, point, and manner of such crossing and connection, the same shall be ascertained by commissioners, one of whom must be a practical engineer, to be appointed by the court, as is provided by the act in respect to acquiring title to real estate. It then provides the manner said commissioners shall proceed in the execution of their duty. It has been held that, in all cases where the two corporations cannot agree, proceedings to acquire the right to cross an intersected track by another railroad track must be had under the statute aforesaid. *In re Lake Shore, etc., R. Co.,* 89 N. Y. 442; *In re Boston R. Co.,* 79 N. Y. 64; *In re New York, etc., R. Co.,* 44 Hun, 215.

"It is true these cases relate to the crossing of one steam road over another. That the provisions of the act under which the proceedings are had apply to street railroads is evidenced by a provision in chapter 583 of the Laws of 1880, amending the same in this regard, which provides that nothing in this act contained shall apply to any street surface railroad in the city of New York; thereby, by irresistible implication, extending its provisions to these roads in all other cities. I have been unable to find any authority suggesting an exemption of street railroads from the requirement of the above statutory provision, since the act of 1880, or at any time, relating to the crossings of steam railroads by a horse railroad. The learned counsel for the plaintiff has called my attention to the case of *New York, etc., R. Co.* v. *Forty-Second St., etc., R. Co.,* 50 Barb. 285. This case involves the question of the right of one horse railroad, running over the same street, in the city of New York, to cross another horse railroad. It was decided before the passage of the act of 1880, before referred to; and whether it is a true exposition of the rights of the company whose track was invaded, as applicable to that city, it is not necessary to determine here. It does not aid in the solution of the question under review. It is proper, however, to say that the crossing of the tracks of one horse railroad by those of another does not involve any of the consequences which might and would reasonably be expected to flow from the crossing of the tracks of a steam road. Paramount among these is the exceeding peril to the lives and property of the public incident to such crossing. The imminence of this peril requires the application of the utmost care, and the creation of the best safeguards to guard against it.

"The necessity of their appointment, and the duties of the commissioners appointed, are well defined in the opinion of the court in *Re Lockport, etc., R. Co.,* 19 Hun, 38. The provisions of this statute were applied, without question as to the propriety of doing so, in *Re Cortland, etc., R. Co.,* for a right to cross a steam road. 31 Hun, 72. I am therefore of the opinion that the plaintiff cannot, without the consent of the defendant, or through the intervention of the commissioners determining the mode and manner, and under what circumstances, the same shall be made, enter upon and cross the defendant's track at the point indicated. It is proper this should be so. The crossing of a steam-railroad track upon the surface is, as before suggested, one of great danger to the public. When such crossing is to be made by a street car, cumbersome and unwieldy in its character, and appropriated to a general carriage of the people of a steam road used in part for the same purpose, it be-

hooves those having the administration of the public affair in charge to see that every precaution is adopted, calculated to protect the people from the danger thus created. The plaintiff suggests that, if it be permitted to cross the defendant's track until the question of its rights is determined upon the trial, it will enter into an undertaking sufficient in amount to protect the defendant against any claim for damage which it may sustain by reason of such crossing. The answer to this proposition, adverse to the plaintiff, is found in the fact that to permit this would be to allow and continue a wrong upon the rights of the defendant, which I am not willing to believe is within the power, as it certainly ought not to be within the will, of the court to permit. That this cannot properly be permitted is further evidenced by the fact that the People's Railroad Company is probably the only one which can make application for the appointment of commissioners, or set in motion the machinery necessary to determine the condition upon which such crossing shall be made. *In re Lake Shore, etc., R. Co.*, 89 N. Y. 442. If right in the conclusion reached, it follows that the injunction order granted in the first-entitled action was improperly granted, and should be vacated. An order in each case will be entered, vacating the injunction order granted therein. In view of the circumstance under which the respective orders were obtained, costs should not be allowed to either party."

Plaintiff appeals.

*N. S. Andrews*, for appellant. *Louis Marshall*, for respondent.

PER CURIAM. The order vacated an injunction order which in effect declared the right of plaintiff to cross the road of the defendant without compensation or regulations prescribed as to the manner of crossing. The defendant had an easement upon which the plaintiff sought to impose a burden without compensation. We are of the opinion that the plaintiff is not entitled to impose such a burden as its road built across the defendant's track would be, until the questions of compensation and manner of crossing are legally determined. *In re Lockport, etc., R. Co.*, 19 Hun, 38; 1 Redf. R. R. 638; *Howlett* v. *New York, etc., Ry. Co.*, 14 Abb. N. C. 328, affirmed, 28 Hun, 55; *People* v. *O'Brien*, 111 N. Y. 1, 18 N. E. Rep. 692.